Oral argument, 15 minutes per side. Mr. Winger for the appellant. You may proceed.  My name is Edward Winger, and I'm here on behalf of the appellant, Mr. Charles Green. At this time, I'd like to reserve three minutes for rebuttal. Mr. Green asked that the court reverse the denial of his motions to suppress. Now we offer two independent, yet overlapping reasons why the search of Mr. Green's residence violated the Fourth Amendment and why the trial court should have suppressed the evidence that resulted not only from the search, but also from Mr. Green's interrogation. The first is that the probable cause supporting the search warrant dissipated prior to the time that the officer executed the search of Mr. Green's house. The second is that the search itself exceeded the scope of the warrant as it was issued. This warning I'd like to discuss primarily for the first reason. Well, and I guess the argument that I think you have to grapple with is maybe it dissipated as to the cocaine, but the cocaine wasn't the only thing in the search warrant. The cocaine was not the only thing that the search warrant authorized the officers to search for. So what, I mean, what do you do with that? It's like, you know, let's say he found out that they took all the crack scales out, you know. All the crack is piled up, you know, in the washing machine, but there's no crack scales. They could still go in and do the exact same thing, right? So, you know, they just swapped out a different item. No, I suppose that is the case, Judge Kethledge, but in response I'd say first the record demonstrates that that's not what this officer was doing. He had stated on the record several times that once he found out that it would be too hot for my client to have cocaine on him at the time, he concluded there was nothing in that house, and he waited until- No cocaine, right? The word he used was nothing, Your Honor. I mean, but fairly, he's not saying that they evacuated, like, all this stuff. That's a pretty broad reading of what the guy said. No, it certainly could be considered a broad reading, but at the same time, going back to what it was that this particular officer was searching for at the time- He was looking for marijuana, it seems. That's correct. And that wasn't something he was authorized to search for, so that's the good thing for you. The bad thing for you would seem is, I mean, we have, for example, this bowling case, which says if circumstances change, you should go to the magistrate, but even if you don't, we're not going to suppress if a neutral magistrate, objective standard, would have found probable cause remained anyway. And so I would say there that, number one, it's not subjectively what's going on in this officer's mind, and number two, we need to focus on was there still probable cause at the time the search happened. I mean, is that the analysis we're going to do here? That is, but I would submit to the court that bowling has essentially crafted a harmless error analysis for this particular violation of the Fourth Amendment, and that question is whether or not we can look back into the past and decide, considering the retaliate circumstances, whether or not this officer did have probable cause to search, irrespective of the fact that he did not bring this information back to the- Right, that's the question. That is the question. And under these circumstances, I believe that that particular part of bowling is problematic because it doesn't do justice to the reason why the exclusionary rule is in place. Well, I mean, we can't overrule bowling. We can't change the analysis, even if we agreed with the point you just made. But in bowling, I don't think that the court actually reached that point. In bowling, the court held that the initial search that allegedly had dissipated probable cause didn't actually dissipate the entire probable cause. In this case, we have a distinction because the officer had said that the object that the search warrant was issued for would not have been found had he executed that search warrant. So I think that we can distinguish that part of bowling on the grounds that this court in bowling had found the probable cause hadn't dissipated. So in that sense, the additional language, that harmless error analysis that bowling had constructed, we believe can be considered dicta in this case. Well, I'm sorry. Please go ahead. If the search warrant had been executed on the day it was issued, do you admit that there was probable cause that day on that warrant? On the day, at the moment the warrant was issued, Judge Seiler. So you don't have to rush out and execute a search warrant within a period of 10 minutes, or else you're out of luck. No, sir. I believe the federal rules provide 10 days. So this came within the 10 days, right? I'm sorry, sir? So within the 10 days of the time it was issued, it was executed? That's correct. It was executed within three days, Judge Seiler. So it met the criteria? It did, but the cases that have construed the time limit under the federal rules of criminal procedure highlight the fact that not only does the warrant have to be executed within the time frame established by the rules, but the circumstances which gave rise to the probable cause have to essentially remain the same. They can't have changed during the time period between the issuance of the search warrant and the execution of the search warrant. Now, back to Judge Kethledge's point about this warrant being issued for several different items of property, I would still submit to the court, number one, that this officer was not searching for crack pipes or baggies or anything else. Did they seize any stuff like that? They had seized scales, I believe, and baggies. Apparently, I mean, doesn't that refute that factual contention? The fact that they found it doesn't change the fact that this officer had testified earlier that he was looking for marijuana when he was searching. But again, I mean, is the test a subjective one about what the officer is looking for? Because I agree with you. I mean, he was candid. But bowling seems to say we don't try to psychoanalyze the officer. We just say, was there still probable cause when the search took place? And, I mean, if that's the test, why wasn't there as to everything but the cocaine? Well, to your point, Judge Kethledge, the first point I would suggest is the objective versus subjective standard, whether or not we look at what the officer was thinking or doing, I would direct this court to this court's decision in U.S. v. Garcia in 2007 where it held that officers may not use a warrant describing one kind of evidence as a pretext for searching for evidence outside of the warrant. So to your point, as far as what this court has said about the subjective test. That's a good answer, pretext test. So in that sense, I think that we do take into consideration the fact that this particular officer, like you had said, Judge Kethledge, candidly said that what he was looking for when he executed the search was marijuana. Did they find evidence of residue of crack cocaine in the place? They did not, Judge Southerly. There was no evidence in the record that shows that any evidence of crack cocaine or powder cocaine. I thought there was residue there, but maybe not. No, sir. But back to the point about bowling. I would suggest, again, that in bowling that case dealt with the fact that probable cause had not dissipated. In this case, I think that As to what, one thing or everything? It's not entirely clear from the bowling opinion. I would candidly tell the court that probably it was probable cause that dissipated the entire warrant, but that is information I'm not sure of based on the bowling opinion itself. But it is our position that bowling dealt with the fact that probable cause had not dissipated entirely. Bowling dealt with a slightly different factual scenario than what we have in this particular case. That was a prior consent search that the defendant had argued had dissipated probable cause for a later search pursuant to a warrant. Bowling said that the probable cause in that case hadn't dissipated because the consent search essentially was not as extensive. It didn't touch all the areas that the warrant had authorized the police officer to search in. Based on that, I suggest to this court that you can consider bowling's harmless error analysis as dicta and revisit that analysis. What I think you're referring to as bowling's harmless error analysis is the rule that even if the officer did not go back to the magistrate, as we're saying the officer should have, we're not going to suppress if probable cause was still in effect. That's very true. That's exactly the harmless error analysis. Right. And they actually applied that because they had to find that probable cause remained in order for that rule to kick in. And so it wasn't a gratuitous statement of a rule. They actually applied it there, which means it's not dicta. I would describe the way that you have, Judge Catheridge. I have to agree with you on that point. I would still suggest that the facts of this case are different than the facts of bowling in such a way that if we were to take a look at this particular search and whether or not the magistrate would have found probable cause continued to exist based on the information that the officer testified to under the search warrant, it's not at all clear that the magistrate, I should say, would have found that probable cause continued to exist. Now, had this officer returned after he found out that this particular defendant, our client, would not have cocaine on him because he decided that it was too hot, he would have to bring that information back to the magistrate. And the only information he has supporting the continuing nature of probable cause to support this warrant was A, that he had a tip that marijuana might be coming into the residence, which is a substance just not contemplated by the four corners of the warrant. And B, he had seen Mr. Green get in his car, leave to go to Chattanooga and come back. Under those circumstances, it's our position that probable cause to support the cocaine-specific warrant would not have continued to have been found by the issuing magistrate. Well, the problem with that is what he learns is, quote, there were no longer drugs in the residence, right? Right. That only speaks to one of, say, a dozen different items that the warrant authorizes the officer to search for. It says nothing about, say, the other 11. Well, these other 11 items that you're referring to, Judge Kethledge, none of those standing alone are contraband. We're still talking about baggies or scales or things that if the officer were to search for and seize. I mean, couldn't the officer have gotten a warrant to just go in and find baggies and scales and all that sort of thing? I mean, that would have been a lawful warrant, wouldn't it? I mean, it could be related to some prosecution, you know, going on or something or some investigation. I still think that there needs to be a tie to illegal contraband. I'm not aware of any case that's upheld a warrant issuing an officer or allowing an officer to search for items like scales, baggies, that. A warrant doesn't have to limit itself to things that are themselves unlawful to possess. I mean, warrants all day long, you know, allow you to take files and so on and do all kinds of forensic stuff to try to figure out if some, you know, crime is being committed. And that's kind of, isn't that what the warrant was essentially here at the time of the search? At the time of the search, given, and I see my time's up. You can answer. At the time of the search, given the fact that, even assuming that the cocaine, the probable cause for cocaine had dissipated at that time, I would direct the court to A, what the officer had actually done, and B, the fact that the search itself for baggies, for money, for scales, would not have been authorizing a search for anything that has any sort of criminal nature to it, minus the cocaine that the officer had permission to search for in the initial warrant. All right. Very good. You'll have your rebuttal. Thank you, Judge Catledge. We'll hear from the government. May it please the Court. My name is Luke McLaurin, and I'm here on behalf of the United States. The denial of the defendant's motion to suppress should be affirmed for a very simple reason. There was probable cause to believe the defendant's residence contained evidence of crack cocaine manufacturing, both at the time that the warrant was issued and at the time that the warrant was executed. Now, as you noted, Judge Catledge, the warrant here was broader than just looking for the drugs. It was looking for evidence of this crack cocaine manufacturing, crack cocaine distribution activity that the officer had observed over several months and observed several controlled purchases. There was a lot of reason to believe that this house would contain evidence of this drug trafficking activity. They certainly hoped that they would find drugs, because that's very powerful evidence of drug trafficking activity. But as you noted, Judge Catledge, there's other things that can be evidence of drug trafficking activity. Well, that's your strong point. I mean, this is a bit of a messy case. Admittedly, yes. And the mess, as far as you're concerned, I would think, is the warrant, as far as drugs are concerned, the warrant says you can search for cocaine. The officer says he had reason to believe there was no longer cocaine there. He decides he wants to search for marijuana. The search was timed to find marijuana. And when he's looking for marijuana, he's searching for something that the warrant didn't authorize him to search for. Judge Catledge, I would disagree with that summary of the facts. I think that that is what defendant's summary of the facts is, but that's not what the facts in the record actually show. And I think it's very important to look at the key parts of the record here is the suppression transcript. And I really want to point the court to page ID numbers 310 through 318. Those are really the key pages here, the key discussion. And I want to dispute a few factual points. First, there's no evidence that the officer here was primarily trying to search for marijuana. In fact, he expressly disclaimed that that's what was trying to go on here. If you look on page 316 of the transcript, the defense counsel tried to say, well, look, now that you knew that he was going to have marijuana, didn't that switch the whole focus of your investigation from crack cocaine to marijuana? The officer said, no, not necessarily. I mean, the search warrant was not just for the controlled substance itself. It was for the evidence of the crack cocaine manufacturing receipts, phone records, paraphernalia. The officer himself said, look, I wasn't just looking for marijuana. Of course I thought I was going to find marijuana. I was looking for all this other stuff that the warrant actually authorized. Did the affidavit originally say anything about marijuana sales? No, there was nothing in the affidavit about marijuana sales. And the warrant didn't say anything about searching for marijuana. It said searching for crack cocaine. It did say about searching for crack cocaine, yes. Have a seat. But I'm pointing to that part of the transcript because it identifies that, yes, certainly the officer thought he was going to find marijuana, but he was still looking for evidence of crack cocaine. Also, if you look at the bottom of page ID number 311, the officer clearly stated at the time he executed the warrant, he believed that they were going to find cocaine. He also thought they were going to find marijuana. But he testified he believed he thought they were going to find cocaine. And I also want to clarify. Driving, I mean, the reality is he's searching for some things that are authorized and some things that aren't. And the thing that wasn't is really driving, certainly, the timing of this search. I mean, that's fair, isn't it? To some extent. I mean, I think what's driving the timing of the search is they learned information that, you know, the defendant thought it was too hot, and so he wasn't going to have drugs that day. So they're waiting to figure out, okay, when is he going to have drugs again? And then he tells the confidential informant, hey, come back later tonight. I'm going to have some weed. And so they think and they observe him. They watch him go to a place where it looks like he's engaged in possibly obtaining drugs, and then he goes back to his home. At that point, they think there's good reason to believe that, yeah, he probably has marijuana. But they also, I think, believe, and it's clear from the officer's testimony, he believed that he was also going to find cocaine. And I think the point is that, you know, he could have been obtaining marijuana as well as cocaine. And I think given this whole history that they had observed at this house of all these multiple sales of cocaine, they had reason to think, okay, he temporarily removed his drugs, and now he's got some drugs back. Now that he's got some drugs back, now's the time to execute the warrant because now's the time that we're likely to find the evidence. And I think that I just wanted to clarify that factual point. But I would say even beyond that, even Judge Kethledge, if this were a case where it was absolutely clear that the officer was looking for marijuana and he only had a warrant to search for cocaine, that would not be a problem. Now, the defendant cites all these cases like Rettig and a lot of these older cases from the 1970s. Those cases fly in the face of a Supreme Court case. There's been a lot of flying in the face here this week. There certainly has. But I think that there's a really important Supreme Court case that's relevant here, Horton v. California. It was a 1990 case. The site is 496 U.S. 128. That case involved a situation where an officer sought a warrant for a robbery suspect. And he had reason to believe, and he put in his affidavit, that he was going to find not only the proceeds of the robbery but weapons that were used in the robbery. The magistrate who issued the warrant said, you know what, I'm only going to give you the warrant to look for the proceeds. I'm not going to give you the warrant to look for the weapons. The officer went into the place, and he was, of course, looking for both, and he found the weapons. And the Supreme Court said, you know what, that's okay. It doesn't matter that even though he went in there knowing and looking for something that was not specifically authorized by the warrant, if it was there, if it was in plain view, if he had a reason to be there, if it was authorized to be there, that was okay. What was the name of that case? Horton v. California. You said plain view. Is that a requirement for that case to apply? Because not necessarily all the stuff was in plain view here. Well, I think that that case was a case under the plain view doctrine, and the key doctrinal point out of that case is that plain view doctrine doesn't require inadvertence. I mean, even if an officer This isn't a plain view case. I mean, am I mistaken in that? Well, our argument is that this is a plain view case. The officers went in the house. They were looking for evidence of They open the drawer and it's in plain view? That kind of plain view? Yes. Well, I mean, they had a right to look for this evidence of crack cocaine and crack cocaine manufacturing, and while they were doing that search for what they were lawfully allowed to search for They shook out the drawer. It's in plain view, right? Well, I mean, it's reasonable when you're looking for evidence of crack cocaine manufacturing and evidence of crack cocaine that you're going to look in drawers. If you pull open a drawer and you don't see cocaine but you see another drug, I mean, it would be unreasonable for the officer to simply ignore that other drug and say, oh, wait, wait, well, you know, I only have this warrant for one drug. I mean, I'm going to ignore the fact that I found some other contraband. I mean, and that's precisely what the Supreme Court was getting at, that when the officers are lawfully conducting a search, that they are allowed to seize the items they find. But I wanted to point They were allowed to seize the pistol that was found there because that wasn't listed on the warrant, right? That wasn't listed on the warrant, but its contraband nature was immediately obvious. It was not there where they could see it. It was. While they were Searching for other cocaine and so forth. It was found in areas that they were searching for this evidence of cocaine and cocaine manufacturing, and they found the firearm. And the contraband nature of it was perfectly clear because the officers executing the warrant knew that this individual had prior convictions, and so they knew that he was not allowed to possess the firearm, so its contraband nature was immediately obvious. I also want to correct one other factual point in the record. The defendant keeps Again, I think a large part of his arguments are based on a mischaracterization of what the suppression transcript actually says. He says, well, the officer admitted that there was no probable cause. He expressly declined to say that. The defense counsel tried to get him to admit it on page 311 of the transcript. So then the probable cause you had was no longer valid. The officer's answer? No. And then defense counsel also points out, look, he said that there was nothing there. The only person who said that there was nothing there was the defense counsel at the suppression hearing. The officer's testimony was that there were no drugs going to be found. And then if you look later on in the transcript, the officer was very clear that he still expected to find all this evidence of crack cocaine manufacturing. So I think if you consider the record in full, what we have is a situation here where all the information that the officer learned subsequent to the issuance of the warrant, none of that undercut probable cause to believe that there would be evidence of crack cocaine manufacturing at the defendant's residence. And so I think applying the standard in bowling, that test in bowling is, would a neutral magistrate under the totality of the circumstances still have found probable cause? The emphatic answer to that question is yes. And I also wanted to address one legal point that you had brought up earlier, Judge Kethledge, about the bowling decision. The defendant has maintained that the bowling decision, what he characterized as a harmless error analysis, was dicta. It absolutely was not dicta in that case because the bowling court there found, expressly criticized the officers in that case for not going to the magistrate judge. It said, look, the officers, when they conducted this initial quick search of the trailer that revealed nothing, that quick consent search, they should have gone back to the magistrate. But the court said, we're going to apply this principle that even though they should have gone back to the magistrate, under the totality of the circumstances, their failure to do so wasn't problematic because even if they had gone back to the magistrate, there would have been probable cause. So that legal point was not at all dicta in the bowling case. It was central to the bowling case's holding. Unless there are any other questions about this issue or any of the other issues, we're certainly happy to rest on our briefs, but we want to make sure the judges get a chance to ask any questions you have. Did they find anything in that residence dealing with cocaine or crack or anything? Yes, they did. They found scales. I believe they also found baggies. Did they find any residue? I don't know the answer to that question off the top of my head, but I think the relevant pages in the record that would have that information would be page IDs numbers 132 through 141. That includes the warrant and the search warrant return. If I'm looking at the officer's return, it talks about them finding electronic scales. They also found cash, and they did find the weapons, of course, and the ammunition. But the scales and the cash and the baggies could go with the marijuana too, I suppose, right? Certainly they could, but given all the evidence of all these prior sales that were occurring at this house, I think it's reasonable to believe that the defendant was using those scales not just for his marijuana operation but also for his cocaine operation. One last factual point, just to clarify it for the record, you had asked a question about Rule 41 and the 10-day period. This warrant wasn't issued under Rule 41. It was issued by a Tennessee state court, and the rule in Tennessee is five days. And the warrant was executed within three days, so it was still within the period. Still within that rule. Yes. But just wanted to clarify that point for the record. All right. Very well. Thank you. Thank you. We'll hear from Mr. Wenger in rebuttal. Thank you, Judge Kethledge. Just briefly in response, the government rests its hat on Horton. As Judge Kethledge had recognized, Horton is a plain view case. And this case that we have is not a plain view case. Well, I think he's got a point, though, doesn't he, that the officer is authorized to look for this other stuff. If in the course of looking for the other stuff, other contravans in plain view, like the pistol, or I think it was a pistol, then that's plain view. That might be true. I would direct this court again back to the Garcia case. This is 496 Fed Third and Garcia, and particularly Judge Moore's concurrence, which candidly did criticize the tension between Horton and the holding in Garcia. But this court has said that, under the circumstances, it has prevented officers from using a warrant describing one kind of evidence as a pretext for searching for evidence outside the warrant. Is that the majority holding? That is the majority. Okay. But, you know, Mr. McLaurin points us to testimony that suggests the officer that it wasn't a pretext, that he was, in fact, looking for a bunch of the stuff that he was allowed to look for. Well, I think that the better view of the record was what you, sir, have identified before, and that's the timing of the search, the reasons why the search, and his own testimony suggests that this search was driven by a desire to find the marijuana that was described to him as being present in that house. Now, the other factual correction that I'll make is there is testimony in the record that says that, where the officer agreed that there would be, quote, nothing in that house had he searched that record. And, you know, conceitedly, this warrant was issued for more than the contraband itself. But I would ask this court to take a look at what was actually going on during this search. This was not a search for baggies. This was not a search for scales. And had this search been for baggy scales or other evidence of a crack cocaine distribution operation, that search would have occurred when that warrant issued. There was no suggestion in the record as to any reason why that search was delayed, except for the fact that this officer was waiting for drugs to become present again in this residence. Now, unfortunately for the officer, the drug that he found out about was not one that he was authorized to search for under the terms of this warrant. Well, an officer is never sure that there's going to be drugs there because they come and go all the time. He could have executed it within 24 hours and may have found all sorts of things. He just didn't think there was any in there. I would submit to you that this is really a rare case where we have testimony from the officer saying that what he thought he would find whenever he asked for the warrants would not be there had he executed the search warrant as it was issued. And when he actually did execute that search warrant and looked in Mr. Green's house, he was looking for something that was not described in that warrant. Thank you, Your Honor. Very well. Mr. Wenger, I know you've appeared here under the Criminal Justice Act, and we want to express our sincere appreciation for your fine advocacy in your brief and here before us today. Thank you, Justice. Thank you. Case to be submitted. Clerk may call the next case.